In the Matter of the Assignment of EDWIN W. HOLBROOK et al.

Proceedings under the General Assignment Act (Chap. 466, Laws of 1877, as amended by chap. 318, Laws of 1878), for the examination of witnesses are warranted only when taken in aid of the assignment; they are not authorized merely to show that property has been fraudulently withheld or preferences fraudulently given, and thus to assail and avoid the assignment. Whoever avails himself of the provisions of the act elects to join

in aid of its purpose, which is to bring in and distribute the assigned property according to the terms of the assignment.

Under the provision of said act (§ 21), authorizing the county judge, on petition of a party interested, to order the examination of witnesses and the production of books and papers before him or a referee, the examination only can be committed to a referee, who is to take and file the testimony; the judge has no authority to direct the referee to report his opinion on the evidence, or to examine such witnesses or compel the production of such books and papers as the petitioner may require; the judge himself must in his order name the witnesses, and the books and papers. The propriety of any examination sought is to be determined by the judge and may not be delegated to a referee.

An affidavit of an attorney for the petitioner simply of his belief that the testimony of a witness named is material to the matters concerned, is not sufficient to require the issuing of an order for his examination. Such facts or information should be presented as to make it appear that some benefit will result to the estate from the examination.

The judge to whom application is made has a discretion in the matter, and unless an abuse of this discretion appears, his decision may not be reviewed on appeal.

(Argued June 17, 1885; decided October 6, 1885.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, made March 14, 1884, which affirmed an order made at Special Term, denying a motion for a supplemental order of reference, under section 21 of the General Assignment Act of 1877. (Laws of 1877, chap. 466, as amended by Laws of 1878, chap. 318.)

It appeared from the papers that in July, 1883, the firm of E. W. H. & Co. made a general assignment for the benefit of their creditors to one D., who was subsequently discharged and V. was substituted in his place. On the 8th of December, 1883, on the petition of the Middletown Bank, a creditor of the firm, an order was made for the examination of the assignors and assignee, and such other witnesses as might be ordered to appear before a referee, and the production of books, which at the time of the assignment, or within one year prior thereto, were kept by the assignors, for the purpose of ascertaining whether all the property of the assignors had been turned over to the

assignee, or whether the assignee had performed his duty. The petition contained many allegations tending to show that the assignment was not made in good faith, and among other things that some of the preferred debts were not valid, and as to all these matters an examination was asked for. The order seems to have been *ex parte*, and was broad enough to cover all questions relating to the extent, value and situation of the assigned estate. A motion to vacate it was denied, and the examination directed to go on. On the 24th of January, 1884, and after evidence had been taken, on several hearings the same petitioner obtained an order from another judge, requiring the assignors and assignee to show cause why a supplemental order of reference should not be made, providing,

*First.* That the referee named in said original order shall be authorized and directed to report his opinion with the testimony taken by him upon the questions so referred to him.

*Second.* That he shall subpœna to appear before him with their books and papers, such witnesses as may be material in addition to those named in said original order, and that the petitioner have leave to examine before said referee said additional witnesses, and such of their books and papers as he may order them to produce for inspection; or providing that the referee shall subpœna or summon to appear before him, with their books and papers, certain witnesses named or referred to in the motion papers, in addition to those named in the original order, and such other witnesses as may appear to be material, by any papers which may be served upon the attorneys for said assignor and assignee, at least two days before the argument of the motion; and

*Third.* That the assignors be required to produce before the referee all books and papers kept by them since the organization of their firm, or covering such shorter period as said referee may deem sufficient for the purposes of the investigation.

*William Henry Clark* for appellant. All examinations under section 21 of the General Assignment Act of 1877 must

be in aid of the assignment. (*Matter of Burnett*, 8 Daly, 363; *In re Goldsmith*, 10 id. 112.) Parties having dealings with the assignors can be examined in these proceedings for the purpose of discovering assets of which the assignee should have taken possession, and this for the purpose of showing misconduct and neglect of duty on the part of the assignee, and for the general benefit of the assigned estate. (*Webber* v. *Truax*, 19 N. Y. Daily Reg., No. 9; *Southard* v. *Bennett*, 72 N. Y. 424.) The twenty-first section of the General Assignment Act was intended to provide a means for inquiring into the fraudulent withholding or diversion of assets by the assignor prior to the assignment. (*In re Brown*, 10 Daly, 116; *Matter of Burtnett*, 8 id. 363; *In re Everett*, 10 id. 99; *Matter of Goldsmith*, id. 99.) The validity of preferred claims can be attacked or inquired into in these proceedings. (Code of Civ. Proc., § 2460; *In re Lewis*, 81 N. Y. 424.) A court of equity will not execute a trust founded in fraud. (1 Perry on Trusts [3d ed.], 49.) Preferences are not favored by the courts and they will avoid them if any good reason can be found. (2 Perry on Trusts [3d ed.], 139.) The substituted assignee should be removed for misconduct. (Bishop on Insol. Debt. 160; *Dimon* v. *Delmonico*, 35 Barb. 554.)

*George DeForest Lord* for respondent. It was not competent for the court to grant so much of the appellant's application as asked that the referee should report "his opinion" * * * "upon the question so referred to him." (Laws of 1877, chap. 466, § 21.)

Danforth, J. The primary object of the act in relation to assignments is remedial, and it should be liberally and beneficially construed. It does not follow, however, that one, because he claims to be, or in fact is a creditor, may, on his mere wish, have the examination of such books and witnesses as he selects for that purpose. He must invoke a judge. Nor is it enough for him to have, as the petitioner here had, the belief of his attorney, although on oath, " that the testimony of each

and every of the witnesses named is material to the matters concerning which the court has ordered an examination." It should be made to appear at least probable that some benefit will result to the estate from the examination. Or, in other words, the judge must be satisfied not only that the proposed examination is in good faith and has relation to the assignment or some matter connected therewith, but that the witness to be examined has, or the book or paper to be produced contains information pertinent thereto. The statute does not in terms say this, but it requires an order to be made on petition and by necessary implication, that the judge who makes it shall have facts or information before him. He has a discretion in the matter, and if no reasonable probability is shown of any good resulting to the estate or to the creditors, the petition should be denied. Here there was no abuse of discretion. As to the object of the motion, it is enough to say, that under section 21, the examination only is committed to a referee, and the evidence so obtained is to be filed in the county clerk's office for use in actions or other proceedings. His opinion would be extra-judicial, and there is no authority vested in the judge to require it. As to the second, the judge himself must, in his order, name the witnesses to be examined, and cannot delegate that authority to a referee or other person, and upon the papers before him he might well hold that no reason appeared for the examination of those specified by the petitioner. The same principle applies to the production of books and papers. Its propriety, under this section, is to be determined by the judge and cannot be delegated to a referee. A very large discretion is committed to the court or judge having charge of the proceedings under this act, and, by its very terms, the court or judge is to make all necessary orders to govern the practice under it. (§ 26.)

We find, therefore, nothing which is the subject of review, unless we are to take notice of the opinion of the judge at Special Term, and give to his language the construction contended for by the appellant. We may do the first because the order appealed from recites that it is put upon the " grounds

stated in the opinion " at Special Term. (*Tolman* v. *Syracuse, etc., R. R. Co.,* 92 N. Y. 353.) It cannot be so construed, however, as to imply that any part of the relief asked for, except as above stated, was denied for want of power, and as to that the court was clearly right. As to the rest, the court might well conclude that the original order was broad enough to permit any legitimate examination tending to aid in the administration of the assignment. Beyond that, the act does not go. The section referred to (§ 21) is indeed very broad, but its language must not be taken too literally. In any view it is inquisitorial enough, but that is of necessity. The statute regulates the action of a debtor in disposing of his property. It is restrictive, imposing conditions unknown to the common law, among others that he shall give with the assignment a true account of all of his creditors, the sums owing to each, the true cause and consideration therefor, and of any security for its payment, and so of his estate. There must be a full and true inventory of it, its circumstances, the securities and vouchers relating to it, its nominal, and also its actual value according to the debtor's knowledge, and although these accounts are to be verified it is evident that neither the creditors nor the assignee are to be concluded. If not made by the debtor, the assignee may prepare them so far as he can, and for that purpose the county judge may compel the debtor, or any other person, to appear before him and disclose any knowledge or information he may possess " necessary to the proper making of such inventory or schedule " (§ 3). So the assignee may, through an order of the county judge, call upon the creditors to present their claims with vouchers, and upon his petition, or that of a creditor, an accounting may be had, and on that proceeding the judge is given power " to examine the parties and witnesses on oath in relation to the assignment and accounting, and all matters connected therewith    *    *    *    and the production of books and papers " (§ 20). As he is to take and state the account, so he may " settle and adjudicate upon it and the claims presented " (subd. 4). Then follows section 21, declaring that " the county judge may also at any time, on

petition of any party interested, order the examination of witnesses and the production of any books and papers by any party or witness before him or before a referee appointed by him for such purpose, and the evidence so taken, together with books and papers, or extracts therefrom, as the case may be, shall be filed in the county clerk's office, and may be used in evidence by any creditor or assignee in any action or proceeding then pending or which may hereafter be instituted. No witness or party, as above provided, shall be excused from answering on the ground that his answer may criminate him, but such answer shall not be used against him in any criminal action or proceeding."

The general words are necessarily qualified and limited by the purposes of the act, and the objects thereinbefore stated, as the end of the examination. So construed it is practicably just and reasonably convenient. If the words control so that not only at any time, but for any and all purposes which a creditor might suggest, an examination of persons and books could be had, there would be palpable injustice and absurity. The statute first provides for examinations at specific times and occasions — upon default of the debtor (§ 3); upon the accounting and investigation of claims (§ 20). The section quoted (21) provides a similar opportunity without reference to these events. The judge, therefore, may at any time when properly moved order it, but no new purpose or object is declared. Nor need it have been. The scope of the examination covers the object of the statute. The debtor and any other person summoned for examination must give such information as he has upon the topics before specified — the assignor's property and matters affecting it. The debtor may be deemed under a cross-examination as to all the things required to be disclosed by him in his schedules or inventories. He must discover his whole estate and effects as they were at the date of the assignment. So the witness must answer every question put to him about the debtor's property, whatever the result may be to either, and even, although the answer may

criminate him, it must be given.   Thus the assignment is aided and made effective.   But to go beyond this and allow an examination, merely to show that property has been fraudulently withheld, and preferences fraudulently given, would convert an auxiliary proceeding into a direct one, and prevent, not facilitate, the administration of an estate in the mode and under the circumstances specified by statute.   For that the statute has not provided.   It may happen that even within the limitations suggested, the examination will disclose frauds and fraudulent practices in withholding or concealing property, or in enumerating debts.   If so, it will be an incident of which no one can reasonably complain, and of which the creditor in some other action may have the benefit.   But, under the provisions in question, neither the court nor judge can initiate proceedings for that purpose.   Nor do I understand the cases cited by the appellant (*In re Burtnett*, 8 Daly, 363 ; *In re Everitt*, 10 id. 99 ; *In re Goldsmith*, id. 112 ; *In re Brown*, id. 116) to hold otherwise.   They all in substance decide that the proceeding is warranted only when taken in aid of the assignment.   The whole scheme of the statute is directed to bringing in and distributing the assigned property according to the terms of the assignment.   Whoever avails himself of its provisions elects to join in aid of that purpose.   If a creditor seeks to assail the assignment, and avoid it, he must resort to those actions and remedies which the law provides. For example, if he has a judgment and execution to supplementary proceedings, for affirmative relief, to the action given to compel discovery of property and satisfaction of the judgment.   (New Code, § 1871.)   It would lead to inextricable confusion, if these remedies were pursued under the act in question.   The jurisdiction of the County Court, so far as that statute is concerned, is limited to proceedings under it (§ 25), and while it " has full power to do all and every act relating to the assigned estate, the assignees, assignors and creditors " (§ 25), the foundation of its jurisdiction is the assignment, and while it may exercise not only specific statutory power, but also " the power of a court of equity," it is confined by the

very words of the act to those " in reference to the trust and any matters involved therein." (§ 25.)

Much of the argument of the appellant's counsel was to show that, through the examination sought for, it would appear that the assignee had mismanaged his trust, and his points say that "the question before the court in this proceeding is whether for his misconduct he should be removed." The motion papers contain a great deal of matter apparently useful for no other purpose. But no such question was passed upon by either court, nor did that appear to be within the order to show cause.

We find no error in the order made, and think it should be affirmed.

All concur.

Order affirmed.