[No. 2696.  Decided December 21, 1897.]

*In the Matter of the Assignment of H. H. Day, Insolvent:*
H. G. THOMPSON, *Appellant,* v. E. B. SINES *et al.,*
*Respondents.*

APPEAL — SUFFICIENCY OF NOTICE — PRESUMPTIONS — WAIVER — AS-
SIGNMENT FOR BENEFIT OF CREDITORS — RIGHTS OF ASSIGNEE AS
AGAINST PRIOR MORTGAGEES — COSTS.

Where the journal entry of the clerk of the court recites that
appellant "gives notice of appeal in open court from the final
judgment this day made in the above entitled cause," it raises
the presumption that notice was given at the time the judgment
was rendered.

A notice of appeal designating what orders are appealed from
designates with sufficient clearness the grounds of appeal, with-
in the requirements of Laws 1893, p. 121, § 4 (Bal. Code, § 6503).

Where an apellant has duly perfected and is engaged in prose-
cuting his appeal, the fact that a distribution of funds ordered by
the judgment appealed from has been made and the portion al-
lotted appellant has been received by him, does not amount to a
waiver of his appeal.

A notice of appeal reciting that appellant "gives notice of
appeal from the final judgment this day made in the above en-
titled cause, and also gives notice that he will appeal from the or-
der entered February 24, 1897," etc., is sufficient as a notice of ap-
peal from the order of February 24th, though not in apt lan-
guage, as Laws 1893, p. 120, § 1, subd. 7 (Bal. Code, § 6500), pro-
vides that an appeal from any final judgment shall also bring
up for review any order made in the same action either before
or after judgment in case the record sent up on the appeal shall
show such order sufficiently for the purposes of a review.

Where an assignment of all a debtor's property has been made
for the benefit of creditors, the assigned property passes as a
trust fund into the assignee's hands as an officer of court, and a
mortgagee of a portion of such property under a mortgage giving
a right of possession and power of sale in case of default is not
entitled to withdraw same from the hands of the assignee for
purposes of foreclosure.

The reasonable expenses incident to an assignment proceed-
ing are entitled to payment from the trust fund for creditors in

the assignee's hands, even if their payment, by reason of the smallness of the estate, necessarily impairs the amount due under prior mortgage liens.

The expenses of litigation incurred by reason of the unsuccessful attack of creditors of an insolvent debtor upon preferential mortgages made by him prior to an assignment are not properly chargeable against the estate in the assignee's hands.

Appeal from Superior Court, Pierce County.—Hon. W. H. H. KEAN, Judge. Modified.

*Johnson Nickeus*, for appellant.

*Murray & Christian*, and *Easterday & Easterday*, for respondents.

The opinion of the court was delivered by

GORDON, J.—The appeal in this case is from a judgment and order of distribution, and appellant seeks the review of various intermediate orders made in the course of the assignment proceedings. A motion to dismiss has been made upon various grounds. The first is that it does not appear from the record that the notice of appeal, which was oral, was given at the time the judgment or order was rendered or made. The notice as shown by the journal entry is as follows:

" H. G. Thompson by his counsel, Johnson Nickeus, Esq., gives notice of appeal in open court from the final judgment and order this day made in the above entitled cause, and also gives notice that he will appeal from the order entered February 24th," etc.

It appears from the record that the judgment was entered on that day, and, it further appearing that the notice was given in open court, it must be presumed that it was given at the time the judgment was rendered. It can not be presumed that the court would have permitted the entry of the notice at any other time, or that the clerk entered the notice without the direction of the court. The second ground of

motion is that it can not be ascertained from the notice what the appeal is sought to be taken from. We think the notice designates with reasonable certainty from what orders the appeal is taken, and, if it does that, it is sufficient under the statute. Laws 1893, ch. 61, § 4, p. 121 (Bal. Code, § 6503).

It is further urged that there is no longer any controversy between the parties. It appears from the record that the distribution ordered has in fact been made. This of itself, we think, affords no sufficient reason for dismissing the appeal. The appellant preserved proper exceptions to the rulings complained of, and perfected an appeal within the time allowed by law by giving notice and bond for costs, and the giving of a bond to stay the judgment and order was not a condition upon which his right to appeal depended. It is also urged that by accepting a sum which was by the order appealed from directed to be paid to the appellant, the appellant thereby waived a right to appeal. Disposing of a similar question in *Hinchman v. Point Defiance Ry. Co.*, 14 Wash. 349 (44 Pac. 867), we said:

" . . . it is apparent that the appellant is entitled in any event to all that he received, no matter what disposition is made of the case."

The ruling in that case is decisive of the question raised here, and upon the authority of it this branch of respondents' motion must be denied.

Lastly, it is urged that the appeal herein is not from any order which was prejudicial to the appellant. It is urged that the language of the notice, viz., "that he will appeal from the order entered February 24, 1897, fixing the amount to be paid the attorneys and other costs in the proceeding," does not constitute a good notice of appeal, and that " to take an appeal " a party must give notice that he *does*, not that he *will*, appeal. It is manifest that by the

notice in this case appellant sought to bring himself within the provisions of section 1, subd. 7, of the act of 1893 (Laws 1893, p. 120, Bal. Code, § 6500), which in substance provides that an appeal from any final judgment shall also bring up for review any order made in the same action or proceeding either before or after the judgment, in case the record sent up on the appeal shall show such order sufficiently for the purposes of a review. While the language of the notice was somewhat unfortunate, we think it could not have misled the respondents, and indeed we think the notice of appeal need not have described anything more than the final order or judgment to have authorized us, under section one of the act, to review any order made in the same proceeding. The motion to dismiss the appeal must be denied.

On the 28th of December, 1895, H. H. Day, a jeweler doing business in the city of Tacoma, was indebted to different persons in amounts aggregating $13,000. On that day he executed three chattel mortgages on " all of his goods, wares, merchandise and fixtures," for the purpose of securing certain creditors therein named. The first mortgage was given to F. D. Day to secure an indebtedness of $2,965.83, the second to Emma L. Day to secure an indebtedness of $982, and the third to C. G. Alvord to secure an indebtedness of $2,470.89. Two days thereafter the mortgagor made a general assignment of all his property, including that covered by the mortgages, for the benefit of all of his creditors, and in the instrument of assignment nominated J. W. Cloes as assignee. The property embraced within the assignment, not covered by these mortgages, consisted of an equity in lands and certain accounts and choses in action. The assignee named in the instrument qualified and thereafter at a creditors' meeting the respondent E. B. Sines was elected assignee in his stead. The

appellant was present at this creditors' meeting and participated in the proceedings. The assignee thus elected qualified and entered upon the discharge of his duties. In April, 1896, various creditors filed a petition in the assignment proceedings assailing the mortgages referred to, and asserting that they were fraudulent and void as to the creditors. In this petition the assignee subsequently joined. The appellant and the other mortgagees mentioned answered the petition denying that their mortgages were fraudulent and alleging that the property assigned was reasonably worth $11,800. Upon the trial which followed the lower court adjudged all of the mortgages invalid, but upon appeal this court reversed that judgment and held the mortgages valid (15 Wash. 525). On the 18th day of February, 1896, the appellant filed with the assignee her claim, amounting to $1,232, and also a notice that her claim was evidenced by a promissory note secured by a chattel mortgage on the stock of goods held by the assignee, and that she claimed a lien on all of said goods, and the right to be paid in full before any of the creditors of the said assignor were paid any portion whatever. Thereafter, in May, 1896, the appellant made a demand on the assignee for the mortgaged property for the purpose of foreclosure, which was refused, and in January, 1897, she moved the superior court for an order directing the assignee to deliver to her the property covered by the mortgage. The motion was denied. Subsequently the court directed the assignee to sell the assigned property, including that mortgaged, and it was sold in separate lots for an aggregate sum of $4,386.50, only an insignificant sum being realized from the sale of the property not embraced within the mortgages. From the proceeds of the sale the court directed that the mortgage claim of F. D. Day, amounting to $3,346.67, should be paid in full. To this there was no objection made

below, and no complaint is made here. The court then found that there was due appellant on her note and mortgage the sum of $1,083.45, and an additional sum of $51.70 costs in the supreme and superior courts, making a total of $1,140.15. But the court directed that certain allowances and expenses incurred should be paid before any portion of the sum realized on the sale should be applied upon appellant's claim. The allowances and expenses were as follows: For services of assignee, $150; for services of assignee's attorney, $200; for costs of keeping goods and printing notice of sale, $128.45; and $51.70, costs of litigation in the former appeal, making a total of $530.15.

It is the contention of the appellant that these allowances and expenses were not entitled to be paid in preference to her mortgage claim. It is urged that if the property had been delivered to appellant when demand was made by her upon the assignee, the cost of storage would not have been to exceed $20, and there would have been no attorney's fees or assignee's fees of any consequence, and that as appellant had nothing to do with starting the litigation she should not be required to pay for it. It is also insisted that the contractual right to take possession and foreclose contained in the mortgage authorized the appellant to proceed without any reference to the assignment, and that, unless a mortgagee under such circumstances is entitled to possession and to foreclose without regard to the assignment, the obligation of the contract is impaired. The principles involved in these various contentions have frequently received the attention of this court. *Traders Bank v. Van Wagenen*, 2 Wash. 173 (26 Pac. 253); *Hamilton-Brown Shoe Co. v. Adams*, 5 Wash. 333 (32 Pac. 92); *Sabin v. Adams*, 5 Wash. 768 (32 Pac. 793); *Mansfield v. Bank*, 5 Wash. 665 (32 Pac. 789); *Cosh-Murray Co. v. Bothell*, 10 Wash.

314 (38 Pac. 1118);   *Meeker v. Sprague,* 5 Wash. 242
(31 Pac. 628).

In *Sabin v. Adams, supra,* we said:

"The sooner it is understood that when an estate is assigned it is in the *possession of the court* for orderly *pro rata* distribution, and that no one can interfere with it except at his peril, the sooner creditors will be able to realize fair dividends, and the objections to the law of assignments will disappear."

The result of the reasoning of all these cases is that, under our statute, when an assignment is made, the property of the assignor passes into the possession of the assignee as an officer of the court and is brought at once within the jurisdiction of the court, which is invested with full power to direct and control the disposition to be made of the property;   and the distribution of the assignor's estate among his creditors when unaccompanied by fraud, etc., works a discharge of the assignor from further liability.   In *Cosh-Murray Co. v. Bothell, supra,* we held that:

"When an assignment for the benefit of creditors has been made by a debtor, a creditor cannot, during the pendency of the insolvency proceeding, maintain another form of action against the assigning debtor."

There is a wide distinction between an assignment under our statute, and a common law assignment or the statutory assignment provided for under various state laws, where the assignor remains liable for the debts unpaid, and the creditor may, notwithstanding the assignment, maintain an action on the original claim.   *Limbocker v. Higinbotham,* 52 Kan. 696 (35 Pac. 783);   *Lawrence v. McVeagh,* 106 Ind. 210 (6 N. E. 327);   *Coburn v. Boston, etc., Mfg. Co.,* 10 Gray, 243.

In this state *an insolvency proceeding is equitable in its character.* The object of it is two-fold, viz., to distribute the assets of the insolvent among his creditors, and to dis-

charge the assignor from any further liability on account of any indebtedness existing prior to the making of the assignment. It follows that the respondent Sines, as assignee, was warranted in refusing appellant's demand for the possession of the property, and that the fund in his hands was chargeable with the reasonable expenses incident to the assignment proceeding. How such expenses should be in any case apportioned between the respective funds in which secured and unsecured creditors share must be determined by the court in the exercise of a sound discretion. The mortgage creditor or lien holder should never be charged with a greater proportion of the expenses than is just and fair. *Meeker v. Sprague, supra.*

In the present case, in consequence of a failure to realize anything of a substantial character from the proceeds of the estate not mortgaged, the entire expense was charged to the fund derived from the sale of the mortgaged property. This works a hardship upon appellant.

The returns from the sale of the assets were disappointing to all concerned. It seems to have been expected that the sum realized would equal or exceed $10,000. Even appellant seems to have shared in this expectation, as her answer to the petition of the creditors alleged that the assets were fairly worth $11,800. The actual gross receipts, however, were less than $5,000, and it is not contended that this resulted from any mismanagement on the part of the assignee.

We think that, in a case where it appears that the assets of an assignor are so encumbered by mortgages and liens that nothing substantial will remain for the general creditors, a creditor who assails the validity of such mortgages or liens should be required by the court to make provision for the payment of the costs of such litigation and the expenses incurred by the delay which it occasions, in the

event of his attack proving unsuccessful. Had such a course been pursued in the present case, it would have made a fair and equitable adjustment of the costs and expenses possible. The appellant, however, made no demand or request therefor. Her whole contention was based upon the theory that she was entitled to ignore the assignment and recover from the assignee the possession of the mortgaged property.

But, while we think the court did not err in refusing to direct the assignee to turn the mortgaged property over to appellant, we think it was error to direct that the costs incurred in the supreme and superior courts be paid from the mortgaged property in preference to appellant's claim. These costs should have been borne by the creditors who saw fit to assail the validity of the mortgage. Having failed to maintain their claims they can not be permitted to have the costs of their unsuccessful litigation paid from the mortgaged property in preference to the claim secured by the mortgage.

It follows from what has been stated that the assignee was entitled to compensation for his services, and the amount allowed him was not unreasonable. It also follows that his counsel were entitled to reasonable compensation, and the allowance made to them was little enough.

So much of the order appealed from as directed the payment of the costs incurred in the supreme and superior courts—in the proceedings which involved the validity of the mortgages—in preference to appellant's claim, is reversed. In all other respects the several orders are affirmed, and the cause remanded for further proceedings in accordance with this opinion. Neither party will recover costs upon this appeal.

SCOTT, C. J., and ANDERS and REAVIS, JJ., concur.

DUNBAR, J., concurs in the result.